IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LARRY BRADFORD MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:17-CV-37-ALB |
| | ) | |
| ADMINISTRATION OF THE CHAMBERS | ) | |
| COUNTY SHERIFF'S DEPT.—TO WIT: | ) | |
| SHERIFF SID LOCKHART, MAJOR CLAY | ) | |
| STEWART and CAPT. TOMMY SIMS, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Larry Bradford Moore, a pre-trial detainee confined in the Chambers County Detention Facility, challenging the living conditions in this facility. Specifically, Moore complains that there are issues with the facility's water supply due to a lack of "proper waste management" as sewage lines leak and become clogged. Doc. 1-1 at 1. Moore names Sid Lockhart, the Sheriff of Chambers County, Alabama, Major Clay Stewart, the Jail Administrator, and Captain Tommy Sims, the Assistant Jail Administrator, as defendants. He seeks declaratory and injunctive relief for the alleged violation of his constitutional rights.

The defendants filed an answer, special report, supplemental special report and supporting evidentiary materials — including affidavits, jail records and documents relevant to plumbing repairs — addressing Moore's claims for relief. In these documents, the defendants deny

violating Moore's constitutional rights.

After the defendants filed their initial special report, the court issued an order directing Moore to file a response to the arguments set forth by the defendants in such report and advising him that his response should be supported by affidavits or statements made under penalty of perjury and other appropriate evidentiary materials. Doc. 19 at 3. The order specifically advised the parties that "at some time in the future the court may treat the defendants' report . . . as a dispositive motion[.]" Doc. 19 at 3. In addition, the order specifically cautioned the parties that "<u>unless within fifteen (15) days from the date of this order a party files a response in opposition which presents sufficient legal cause why such action should not be undertaken</u> . . . the court may at any time [after expiration of the time for the plaintiff filing a response to the order] and <u>without further notice to the parties</u> (1) treat the special reports and any supporting evidentiary materials as a . . . motion for summary judgment, . . . and (2) after considering any response as allowed by this order, rule on the motion in accordance with the law." Doc. 19 at 4 (emphasis in original). After the defendants' filed their supplemental special report, the court issued an order providing Moore an opportunity to respond to this report and "advised [him] that in filing his response to the supplemental special report he shall comply with the directives set for in the order entered on May 23, 2017 (Doc. No. 19)." Doc. 24 at 2. Moore filed unsworn responses to these orders on June 12, 2017 (Doc. 25) and July 27, 2017 (Doc. 31).[1]

---

[1]This court declines to consider Moore's responses to the special reports because these responses were not sworn statements or signed with an averment that they were made under penalty of perjury. *See* 28 U.S.C. § 1746; *Holloman v. Jacksonville Housing Auth.*, 2007 WL 245555, *2 (11th Cir. Jan. 20, 2007) (noting that "unsworn statements, even from *pro se* parties, should not be considered in determining the propriety

Pursuant to the directives of the orders entered in this case, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment. Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, and the sworn complaint, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial).

---

of summary judgment."); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (holding that "the court may not consider [the pro se inmate plaintiff's unsworn statement] in determining the propriety of summary judgment.").

The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the

latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).  The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986), Fed. R. Civ. P. 56(e).  "A mere 'scintilla' of evidence supporting the supporting party's position will not suffice[.]"  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Only disputes

involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the [defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . .  Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint

or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *See Beard*, 548 U.S. at 525.  Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.  Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that Moore has failed to demonstrate a genuine dispute of material fact in order to preclude the entry of summary in favor of the defendants.

## III.  DISCUSSION

Moore challenges conditions of confinement at the Chambers County Detention Facility.  Specifically, he asserts that plumbing problems, including sewage back-up and intermittent running water, exist in the jail which are violative of his constitutional rights and those of other inmates housed in the jail.

### A.  Lack of Standing — Claims Alleged on Behalf of Other Inmates

Standing is a cornerstone of American jurisprudence on which jurisdiction lies. "[A] litigant may only assert his own constitutional rights or immunities." *McGowan v. Maryland*, 366 U.S. 420, 429 (1961), citing *United States v. Raines*, 362 U.S. 17, 22 (1960); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 218–219 (1974) (plaintiff must assert a legally cognizable injury in fact before federal courts have jurisdiction).  "The essence of a standing question is whether the plaintiff has alleged such

a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for the illumination of difficult constitutional questions[.]" *Saladin v. City of Milledgeville*, 812 F.2d 687, 690 (11th Cir. 1987) (internal quotation marks omitted); *Harris v. McRae*, 448 U.S. 297, 320 (1981) (same).

Standing involves two requisite aspects. The first is the minimum "case or controversy" constitutional requirement of Article III. *Saladin*, 812 F.2d at 690. "To satisfy this 'irreducible' constitutional minimum required for standing, a litigant must show 1) that he personally has suffered an actual or prospective injury as a result of the putatively illegal conduct; 2) that the injury can be fairly traced to the challenged conduct; and 3) that the injury is likely to be redressed through court action." *Id*., citing *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982); *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  If any element is lacking, a plaintiff's claim is not viable.  In addition, the Supreme Court has established several requirements based on prudential considerations.  *Saladin*, 812 F.2d at 690 (internal citations omitted) ("The Supreme Court has also stated that, in addition to these essential constitutional requirements, a court should consider the case in light of three principles which might counsel judicial constraint, referred to as prudential considerations. . . .  Those considerations are 1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; 2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately

resolved by the legislative branches; and 3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.").

In the instant complaint, Moore references the alleged violation of other inmates' constitutional rights arising from the plumbing problems at the Chambers County Detention Facility. Under applicable federal law as set forth herein, Moore lacks standing to assert the constitutional rights of other persons. *Saladin*, 812 F.2d at 690; *Allen v. Wright*, 468 U.S. 737, 751 (1984). The prudential limitation applicable in this case is that a litigant may not assert the legal rights or interests of another person. With respect to the claims arising from alleged violations of other inmates' constitutional rights, Moore is not "asserting [his] . . . own legal rights and interests [but] rather . . . the legal rights and interests of third parties." *Saladin*, 812 F.2d at 690. These claims therefore entitle Moore to no relief in this cause of action and summary judgment is due to be granted in favor of the defendants.

**B.  Applicable Legal Standard**

The conditions about which Moore complains occurred from the time of his placement in the Chambers County Detention Facility in July of 2016 until the filing of the instant complaint in January of 2017. It is undisputed that Moore was a pretrial detainee at the time relevant to the complaint. Moore's claims are therefore subject to review under the Due Process Clause of the Fourteenth Amendment which prohibits the imposition of punishment on those who have not yet been convicted of a crime, rather than the Eighth Amendment's prohibition against cruel and unusual punishment which governs claims of

convicted inmates. *Bell v. Wolfish*, 441 U.S. 520 (1979); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners."). "[I]n regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986). As to these conditions claims, the Eleventh Circuit has long held that "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Cottrell*, 85 F.3d at 1490; *Hamm*, 774 F.2d 1574 (holding that for analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

To the extent a jail official may likewise be held liable for the manner in which he addresses a condition of confinement, applicable case law provides as follows:

> In a recent decision addressing a pretrial detainee's excessive force claim, the United States Supreme Court held that under the Fourteenth Amendment the detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable. . . . A court must make this determination from the perspective of a reasonable [official] on the scene, including what that [official] knew at the time, not with the 20/20 vision of

hindsight." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). The court in *Kingsley* reaffirmed that a defendant "must possess a purposeful, a knowing, or possibly a [criminally] reckless state of mind. That is because . . . 'liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process.' *Id.* at 2472 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). The Court further emphasized that the 'guarantee of due process has [historically] been applied to *deliberate* decisions of government officials to deprive a person of life, liberty or property.'" *Id.*

The Supreme Court has not yet ruled on whether to extend the objective reasonableness standard of review set forth in *Kingsley* to cases of pretrial detainees which do not involve the use of excessive force (i.e., cases challenging medical treatment or conditions of confinement). However, an extensive search of post-*Kingsley* cases indicates that . . . [this court and] the Eleventh Circuit Court of Appeals, have continued to utilize the deliberate indifference standard in deciding claims of pretrial detainees which challenge medical treatment and other conditions. *E.g.*, *Massey v. Quality Correctional Health Care, Inc., et al.*, 2015 WL 852054 (M.D. Ala. Feb. 26, 2015), affirmed on appeal, [*Massey v. Montgomery County Detention Facility*, 646 F. App'x 777, 781 (11th 2016) (holding that pretrial detainee must show deliberate indifference, specifically "that the [defendant] knew—actually or constructively—of the dangerous conditions, but knowingly refused to do what was required to ameliorate them[,]" to state a viable claim for relief regarding conditions in a county jail]; *McBride v. Houston County Health Auth.*, 2015 WL 3892715, *10 & 15-20 (M.D. Ala. June 24, 2015) (recognizing the impact of *Kingsley* on excessive force claims brought by pretrial detainees but subsequently applying the deliberate indifference standard to the plaintiff pretrial detainee's medical treatment claim) [affirmed 658 F. App'x 991 (11th Cir. 2016) (holding that district court properly applied the deliberate indifference standard of the Eighth Amendment to pretrial detainee's challenge to constitutionality of medical treatment provided for skin condition)]; *White v. Franklin*, 2016 WL 749063, at *5–8 (N.D. Ala. Jan. 28, 2016), adopted, 2016 WL 741962 (N.D. Ala. Feb. 25, 2016) (applying *Kingsley's* objective reasonableness standard to pretrial detainee's claim of excessive force but addressing his claims of inadequate medical treatment under the deliberate indifference standard of the Eighth Amendment in accordance with prior Eleventh Circuit precedent). . . .

*Smith v. Terry*, 2016 WL 4942066 at *3 (M.D. Ala. Aug. 15, 2016), Recommendation adopted, 2016 WL 4923506 (M.D. Ala. Sept. 14, 2016); *Dang by & through Dang v.*

*Sheriff, Seminole Cty., Fla.*, 871 F.3d 1272, 1279 (11th Cir. 2017) (holding that a pre-trial detainee's conditions "claims are evaluated under the same [deliberate indifference] standard as a prisoner's claim of inadequate care under the Eighth Amendment" and specifically refusing to extend the objective reasonableness standard set forth in *Kingsley* to such claims); *Alderson v. Concordia Par. Corr. Fac.*, 848 F.3d 415, 420 (5th Cir. 2017) (noting that "the Fifth Circuit has continued to . . . apply a subjective [deliberate indifference] standard post-*Kingsley*," to pretrial detainees' claims challenging conditions of confinement); *Moore v. Luffey*, 767 F. App'x 335, 340 n.2  (3rd Cir. 2019) (recognizing *Kingsley's* adoption of the objective reasonableness standard for pretrial detainee's excessive force claim but refusing to extend this standard to medical treatment claims); *Hall v. Ramsey County*, 801 F.3d 912, 917 n.3 (8th Cir. 2015) (noting *Kingsley's* holding in discussion of pretrial detainee's excessive force claim and then applying subjective prong of deliberate indifference to his deprivation of medical care claim.); *Bilal v. Geo Care, LLC, et al.*, 2016 WL 345514, *6 (M.D. Fla. Jan. 1, 2016) (acknowledging *Kingsley* but finding that "[t]he relevant state of mind for a condition[s] claim [*i.e.*, deprivations of food, medical care, sanitation or other objectionable conditions,] is deliberate indifference."); *Gilbert v. Rohana*, 2015 WL 6442289, at *4 (S.D. Ind. Oct. 23, 2015) (finding that *Kingsley* only altered the legal standard for excessive force claims brought by pretrial detainees); *Larson v. Stacy*, 2015 WL 5315500, at *6-9 (N.D. Ala. Aug. 18, 2015), Recommendation adopted, 2015 WL 7753346 (N.D. Ala. Dec. 2, 2015) (court

utilized objective reasonableness standard to address pretrial detainee's excessive force claims but applied deliberate indifference standard to his medical care claims).

**"[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."** *Kingsley*, 135 S.Ct. at 2472 (emphasis in original) (internal quotation omitted).   "Both the [deliberate indifference and objective reasonableness] standards require the plaintiff to show that the defendant was more than negligent in addressing the plaintiff's [claims challenging conditions of confinement]." *Moore*, 767 F. App'x at 340, n.2; *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) ("[T]he test to be applied under *Kingsley* must require a pretrial detainee . . . to prove more than negligence[,] . . . something akin to reckless disregard.").   Thus, a jail official may be held liable for acting with deliberate indifference to a detainee's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it.   *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).[1]

## C.  Plumbing Issues

Moore complains that the plumbing at the Chambers County Detention Facility will, at times, become clogged causing sewage to overflow into his cell and disruption in the flow of water to his sink.   The defendants deny that the plumbing issues about which Moore complains rise to the level of constitutional violations.   The defendants filed detailed

---

[1]Under the facts of this case as set forth below, the court finds that regardless of the standard applied — deliberate indifference or objective reasonableness — Moore's claims do not survive summary judgment.

affidavits and relevant jail records in response to the claims presented against them by

Moore.  After an extensive review of the records submitted in this case, the court finds that

the details regarding maintenance of the jail's plumbing system as set forth by the

defendants in their affidavits are corroborated by the objective service records

contemporaneously compiled during the repair process.  *See* Doc. 28-3 at 2–68.   In

addition, Moore concedes that jail personnel responded to the plumbing issues by

"com[ing] around with a wet-vac to [remove the overflow of] sewage" caused by the faulty

pipes.  Doc. 1-1 at 1.

In his initial affidavit, defendant Clay Stewart addresses the claims set forth in

Moore's complaint as follows:

> Plaintiff has been housed in B block and I block during his incarceration at the Chambers County Detention Facility.  Both blocks are used to house inmates needing to be housed alone or with only one other inmate.
>
> Many of the pipes in the plumbing system at the Chambers County Detention Facility are deteriorating.  Also, the plumbing system has been significantly damaged by inmates flushing contraband such as sheets and towels.
>
> I have met with the Chambers County Sheriff, the Chambers County Commission and the County Administrator to discuss repairs to the jail systems.  A long-term plan is in place to renovate the jail and this plan will solve the plumbing problems [associated with the deterioration of the system].
>
> The Chambers County Commission and the Chambers County Sheriff have a three stage plan to correct the plumbing issues in the jail.  The impound yard has recently been removed from behind the jail to make room for an addition to the jail to be built.  The old jail will be torn down and replaced and the section of the jail built in 1991 will be fully renovated.  Also discussions are ongoing about installing new sewage lines around the jail to tie back into each jail cell block of the current jail.
>
> Ricky Mann, the Maintenance Supervisor for the Chambers County Detention Facility, is assigned exclusively to the detention facility.  Mr.

Mann is knowledgeable in the jail['s] systems and able to perform many repairs in a timely fashion.

The plumbing system has been investigated by several plumbing companies. A local plumbing company is on standby to come to [the] Chambers County Detention Facility to make repairs. If Mr. Mann cannot make the repair, this company is called immediately when pipes back up or plumbing fixtures leak in the jail.

The Sheriff, administrative staff and officers at the Chambers County Detention Facility are not ignoring any plumbing problem in the jail. Inmates are never denied access to plumbing facilities or housed in unconstitutional conditions. Any time water flow to inmate sinks, showers or toilets has been restricted, inmates have been provided access to sinks, showers and toilets in a different cell.

As soon as a problem is discovered, measures to correct it are immediately taken. If corrective measures will take a period of time, inmates are placed in a different housing unit.

A wet dry vac is used if a plumbing fixture leaks into the Facility. If water containing sewage enters a cell block through a plumbing fixture, the inmates would be moved out of that cell until the problem was corrected.

Repairs to pipes under the jail floor have been made. Sink valves are currently being replaced in every cell block. This will eliminate most water leaks from the sinks.

A drink dispenser filled with ice and water is brought into the cell block three times a day with each meal. Thus, inmates have access to drinking water.

The Chambers County Detention Facility is inspected bi-annually by the grand jury and the Chambers County Health Department. The State of Alabama Health Department inspects the jail annually. The Chambers County Detention Facility consistently receives high scores in these inspections and any problems found are corrected as soon as possible. The plumbing problems in the jail have been fully disclosed to inspectors.

Doc. 20-1 at 4–5 (internal paragraph numbering omitted); *see also* Doc. 20-2 at 3–4; Doc. 20-3 at 3–5.

In a supplemental affidavit, defendant Stewart provides additional information regarding the manner in which plumbing problems are handled at the Chambers County Detention Facility. This affidavit provides the following information:

Any written requests regarding plumbing issues or maintenance requests typed into a kiosk submitted by Plaintiff would be contained in Plaintiff's Inmate File. All such requests, to the extent they exist, were submitted as an exhibit to Defendants' Special Report.

Written "maintenance requests" are not submitted by jail personnel to Ricky Mann, the Maintenance Supervisor for the Chambers County Detention Facility, or to an outside plumbing company. These requests are customarily communicated by speaking in person, through a telephone conversation, through a text message, or occasionally by a note attached to Ricky Mann's box used for paperwork at the jail. Mr. Mann has not retained these notes. All jail staff have Mr. Mann's mobile telephone number and often communicate with him through phone call or text.

Mr. Mann is present at the jail each weekday from approximately 6:00 or 6:30 am until 3:00 p.m. Mr. Mann is on call any time he is not present at the jail. He often works overtime and on weekends. If Mr. Mann goes out of town he lets the Maintenance Supervisor for the Chambers County Courthouse and a local plumbing company know that he is leaving town and that they will be on call for the jail. Mr. Mann is knowledgeable and experienced in all jail systems including plumbing, electrical and mechanical. Mr. Mann is directly involved in any repair in the jail unless he is out of town. Currently, approximately, eighty to ninety percent of Mr. Mann's time is spent on the jail plumbing system. If Mr. Mann thinks that a plumbing repair will take more than a day for him to complete, he will call an outside plumbing company to come to the jail and perform the work or assist him in performing the work.

Written "maintenance reports" are not compiled by the Sheriff, jail staff or Mr. Mann. Jail staff work so closely with Mr. Mann that all stay informed of what repair projects are currently needed, in progress, or completed. I keep the Sheriff fully informed of jail projects.

During 2016 and 2017, multiple plumbing repair projects have been completed at the Detention Facility. Several different companies have performed work at the Detention Facility.

Plumcore/Latta Construction out of Gardendale, [Alabama] was recommended to the Sheriff and his staff by the architects designing the new jail addition. This company has performed several major repairs to the jail plumbing system. Piedmont Mechanical out of Lagrange, Georgia also performs larger and more complex repairs at the Detention Facility. Industrial Service and Supply, located in Valley, [Alabama] has performed multiple plumbing repairs at the jail and has a supply store where many supplies for plumbing repairs at the jail are purchased. Both Piedmont Mechanical and Industrial Service and Supply have staff on call 24 hours

a day and can be called to the jail at any time.

Almost one hundred percent of water leaks that have occurred within the past two years in the Detention Facility are hot water leaks. Recently Piedmont Mechanical replaced approximately eight hundred feet of water pipes in the Detention Facility. The old jail sink valves have caused many leaks in the jail. However, all sink valves in the Detention Facility will have been replaced by the end of July 2017. These measures will greatly reduce water leaks at the jail. The toilet valves in the Detention Facility have not been prone to leaking and have been the source of very few leaks.

The floors of the cell blocks in the Detention Facility lack drains. Thus, when water leaks have occurred jail staff and inmate workers use wet dry vacs to remove the standing water. As the sink valves in each cell have been replaced, almost all leaks have stopped.

If any sewage leak does occur the entire cell block is shut down. The only way for sewage to enter a cell block is coming up through a toilet or leaking around a toilet. ***Almost one hundred percent of sewage leaks in the Detention Facility are caused by inmates stuffing various items into toilets. A non-flushable item must be removed from the jail sewage pipes or toilet on average once a month. Inmates have put sheets, towels, bottles, mopheads, food wrappers, pencils, pens and toothbrushes into Detention Facility toilets.***

No inmate in the Chambers County Detention Facility has been housed in a cell with a non-operational toilet or sink. No inmate in the Chambers County Detention Facility has been without toilet access so that they had to use the bathroom in a bag. If a toilet or sink is not working in a cell, the inmates housed in that cell are moved and repair plans are made.

Doc. 29-1 at 1–4 (internal paragraph numbering omitted) (emphasis added).

Finally, Ricky Mann, the Maintenance Supervisor for the Chambers County Detention Facility, submitted an affidavit addressing the facility's plumbing problems as follows:

For the past thirteen years I have been employed as the Maintenance Supervisor for the Chambers County Detention Facility. I am assigned exclusively to the Chambers County Detention Facility. I have over thirty years of plumbing experience.

Written "maintenance requests" are not submitted by jail personnel to me, or to an outside plumbing company. These requests are [instead] customarily communicated by speaking in person, through a telephone

conversation, through a text message, or occasionally by a note attached to my box used for paperwork at the jail.  I have not retained these notes.  All jail staff have my mobile telephone number and often communicate with me through phone call or text.

I am present at the jail each weekday from approximately 6:00 or 6:30 am until 3:00 p.m. I am on call any time I am not present at the jail. I often work overtime and on weekends. If I go out of town, I let the Maintenance Supervisor for the Chambers County Courthouse and a local plumbing company know that I am leaving town and that they will be on call for the jail. I am knowledgeable and experienced in all jail systems including plumbing, electrical and mechanical. I  am directly involved in any repair in the jail unless I am out of town. Currently, approximately, eighty to ninety percent of my time is spent on the jail plumbing system.  If I think that a plumbing  repair will take more than a day to complete, I will call an outside plumbing company to come to the jail and perform the work or assist me in performing the work.

Written "maintenance reports" are not compiled by the Sheriff, jail staff or by me. Jail staff work so closely with me that all stay informed of what repair projects are currently needed, in  progress, or completed.  Major Stewart keeps the Sheriff fully informed of jail projects.

During 2016 and 2017, multiple plumbing repair projects have been completed at the Detention Facility.   Several different companies have performed work at the Detention Facility.

Plumcore/Latta Construction out of Gardendale, [Alabama] was recommended to the Sheriff  and his staff by the architects designing the new jail addition. This company has performed several  major repairs to the jail plumbing system. Piedmont Mechanical out of Lagrange, Georgia also performs larger and more complex repairs at the Detention Facility. Industrial  Service  and Supply, located in Valley, [Alabama] has performed multiple plumbing repairs at the jail and has a supply  store where many supplies for plumbing repairs at the jail are purchased. Both Piedmont Mechanical and Industrial Service and Supply have staff on call twenty-four hours a day and can be called to the jail at any time.

Almost one hundred percent of water leaks that have occurred within the past two years in the Detention Facility are hot water leaks. Recently Piedmont Mechanical replaced approximately eight hundred feet of water pipes in the Detention Facility. The old jail sink valves have caused many leaks in the jail. However, all sink valves in the Detention Facility will have been replaced by the end of July 2017. These measures will greatly reduce water leaks at the jail. The toilet valves in the Detention Facility have not been prone to leaking and have been the source of very few leaks.

The floors of the cell blocks in the Detention Facility lack drains. Thus, when water leaks have occurred jail staff and inmate workers use wet dry vacs to remove the standing water. As the sink valves in each cell have been replaced, almost all leaks have stopped.

If any sewage leak does occur the entire cell block is shut down. The only way for sewage to enter a cell block is coming up through a toilet or leaking around a toilet. ***Almost one hundred percent of sewage leaks in the Detention Facility are caused by inmates stuffing various items into toilets. A non-flushable item must be removed from the jail sewage pipes or toilet on average once a month. Inmates have put sheets, towels, bottles, mopheads, food wrappers, pencils, pens and toothbrushes into Detention Facility toilets.***

No inmate in the Chambers County Detention Facility has been housed in a cell with a non-operational toilet or sink. No inmate in the Chambers County Detention Facility has been without toilet access so that they had to use the bathroom in a bag. If a toilet or sink is not working in a cell, the inmates housed in that cell are moved and repair plans are made.

Sheriff Lockhart, Major Stewart and I have met with the Chambers County Commission to discuss repairs to the jail systems multiple times in 2016 and 2017. The Commission has fully funded all plumbing repairs to the jail.

Doc. 28-1 at 1–3 (internal paragraph numbering omitted) (emphasis added).

Although the Chambers County Detention Facility may experience intermittent plumbing problems, this fact, standing alone, is not dispositive of the issue before this court. Only conditions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Constitution proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Id*. at 346. Specifically, it is concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id*. at 348 (citation omitted). Conditions in a jail which may be "restrictive and even harsh" do not necessarily constitute cruel and

unusual punishment.  *Id*.  Conditions, however, may not be "barbarous" nor may they contravene society's "evolving standards of decency."  *Id*. at 345–46.  Generally, jail conditions rise to the level of a constitutional violation "only when they involve the wanton and unnecessary infliction of pain." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks and citations omitted).

A jail official has a duty under the Constitution to "provide humane conditions of confinement; [these] officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)); *Helling*, 509 U.S. at 31-32.  For liability to attach, the challenged condition must be "extreme" and must pose "an unreasonable risk of serious damage to [the inmate's] future health." *Chandler*, 379 F.3d at 1289–90.  To demonstrate a constitutional violation regarding conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834.  In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation.  With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler Cnty., Ala*., 268 F.3d 1014, 1028–29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  As to the subjective elements, "the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . .   The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'  . . .  [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837–38 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the [prohibited] conduct[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

As previously discussed, *supra* at 10–14, a jail official may also be held liable for acting with "deliberate indifference" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and with this knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 828.

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834–38, 114 S.Ct. at 1977–80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324–25, 115 L.Ed.2d 271 (1991). . . .  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious

harm exists — and the prison official must also "draw that inference."
*Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident'." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before [the responsible official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotations and citations omitted). As the foregoing makes clear, "[m]erely negligent failure to protect an inmate . . . does not justify liability under section 1983[.]" *Id*.

When considering a plaintiff's claim for exposure to human waste, the "frequency and duration of the condition, as well as the measures employed to alleviate the condition, must be considered when analyzing the objective component." *Grimes v. Thomas*, 2014 WL 554700,*7 (N.D. Ala. Feb. 12, 2014), citing *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978). "Although 'courts have been especially cautious about condoning conditions that include an inmate's proximity to human waste,' *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990), it is also apparent that 'toilets can be unavailable [or malfunctioning] for some period of time without violating the Eighth Amendment [or Due Process Clause].' *Johnson v. Lewis*, 217 F.3d 726, 733 (9th Cir. 2000)." *Grimes, supra*.

Despite Moore's allegations regarding sporadic plumbing problems in the Chambers County Detention Facility, which the defendants timely corrected, he does not establish that the challenged conditions denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298–299; *Rhodes*, 452 U.S. at 347. The conditions referenced by Moore, though uncomfortable, inconvenient, unpleasant and/or objectionable, were not so extreme as to violate the Constitution. *See Rhodes*, 452 U.S. at 346; *Chandler*, 379 F.3d at 1289. Violations of the Constitution "typically require the presence of intolerable conditions, far worse than those Plaintiff alleges." *Grimes v. Thomas*, 2014 WL 554700,*7 (N.D. Ala. Feb. 12, 2014). Furthermore, Moore utterly and completely fails to demonstrate deliberate indifference or reckless disregard by the defendants with respect to his health or safety relative to these conditions. Specifically, Moore has failed to present any evidence which indicates the defendants knew that the manner in which they addressed the jail's plumbing problems created a substantial risk to his health or safety and that with this knowledge consciously disregarded such risk. Instead, the probative evidentiary materials establish that the defendants undertook numerous measures to abate the plumbing issues each time they arose. Moreover, under the circumstances of this case, it is clear that the manner in which the defendants responded to the plumbing issues was objectively reasonable. In addition, with respect to Moore's request for injunctive relief, the undisputed evidentiary materials submitted by the defendants indicate that the defendants have undertaken

reasonable measures to correct the plumbing issues about which Moore complains Consequently, summary judgment is due to be granted in favor of the defendants.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  Costs be taxed against the plaintiff.

On or before **January 2, 2020**, the parties may file objections to this Recommendation.  The parties must specifically identify the factual findings and legal conclusions contained in the Recommendation to which his objection is made.  Frivolous, conclusive, or general objections will not be considered by the court.  Failure to file written objections to the proposed factual findings and legal conclusions set forth in the Recommendation of the Magistrate Judge shall bar a party from a *de novo* determination by the District Court of these factual findings and legal conclusions and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact [and law] and those findings are adopted by the district court the

party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done this 18th day of December, 2019.


_____/s/  Charles S. Coody_____
UNITED STATES MAGISTRATE JUDGE